PARIENTE, J.
The underlying question in this case is whether the forum non conveniens doctrine was erroneously applied to force a United States citizen to litigate her negligence action in Mexico, when her lawsuit was filed against a corporation with its primary place of business in Florida and where the allegations of the complaint relate to an incident that took place in Mexico but center on conduct occurring in Florida. In Rabie Cortez v. Palace Holdings, S.A. de C.V., 66 So.3d 959, 963-64 (Fla. 3d DCA 2011), the Third District Court of Appeal approved the dismissal of the plaintiffs lawsuit in Florida, concluding that Mexico was an adequate alternative forum and reasoning that the plaintiffs initial selection of a Florida forum was not entitled to a strong presumption of deference because she is a California resident. We have jurisdiction on the basis that the Third District’s decision expressly conflicts with and misapplies this Court’s decision in Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86 (Fla.1996). See *1088 art. V, § 3(b)(3), Fla. Const.; see also Knowles v. State, 848 So.2d 1055, 1056 (Fla.2003) (stating that misapplication of a supreme court decision creates conflict jurisdiction).[1]
As more fully explained below, we conclude that the Third District’s analysis was flawed in two ways. First, the Third District misstated a rule of law from, and misapplied, Kinney by finding that the plaintiff, by virtue of her out-of-state residence, was not entitled to the strong presumption in the forum non conveniens analysis against disturbing the plaintiffs initial choice of forum. Second, the Third District also erred, as fully explained in Judge Rothenberg’s dissent, by failing to focus on the fact that although this lawsuit involves an assault that occurred in Mexico, the allegations of negligence in this case derive from conduct in Florida by defendants with their primary place of business in Florida.
By misapplying the forum non conve-niens analysis, and particularly by failing to afford a strong presumption in favor of the plaintiffs initial choice of an otherwise proper forum, the Third District’s decision results in a situation where a United States citizen is forced to litigate in a foreign country, imposing a substantial burden on her without a showing that it would be burdensome for the Florida-based defendants to defend the lawsuit in Florida. For the reasons that follow, we therefore hold that the Third District erred in affirming the trial court’s dismissal of this lawsuit on forum non conveniens grounds and requiring the plaintiff to file suit in Mexico. Accordingly, we quash the Third District’s decision.
FACTS AND BACKGROUND
The allegations, which we must accept as true for the purpose of a motion to dismiss,[2] state that the Petitioner, Shahla M. Rabie Cortez (“Rabie Cortez”), was sexually assaulted by a male masseur during a complimentary massage at the Moon Palace Golf and Spa Resort in Cancún, Mexico, where she was vacationing with her family. Rabie Cortez, who is a California resident, was provided with the complimentary massage as part of the benefits she received in exchange for her attendance at a timeshare presentation offered by the resort. Rabie Cortez alleged that these benefits, including the massage, were part of a “timeshare-marketing scheme” and filed suit against the “designers” of her vacation package, including several corporations based in Miami, Florida, stating that the companies’ goal of enticing vacationers such as herself to travel to the Mexican resort was in actuality “to lure [the travelers] into a fine-tuned sales program for timeshares.”
Rabie Cortez filed her lawsuit in Miami-Dade County circuit court and, after voluntarily dismissing several claims, ultimately sued three defendants based on an allegation of negligent vacation packaging: Palace Resorts, Inc.; Palace Resorts, LLC; and Tradco, Ltd., Inc. (collectively, as they *1089 referred to themselves in this litigation, “the Florida Defendants”).[3]
All three of the Florida Defendants have their principal place of business at the same Miami, Florida, address. Palace Resorts, Inc., in particular, “is in the business of promoting, selling and marketing the Palace Resorts in Cancún, Mexico, including the Moon Palace Golf and Spa Resort,” where Rabie Cortez was assaulted. Rabie Cortez alleged that the Florida Defendants control and manage their marketing and vacation package design operations, including marketing and planning for the Moon Palace Resort where she was assaulted, at their Miami headquarters. She further alleged that the Florida Defendants keep records and respond to customer complaints from their Miami offices.
In response to Rabie Cortez’s lawsuit, the Florida Defendants filed a motion to dismiss based on forum non conveniens, arguing that Mexico would be a more convenient forum for litigating the case.[4] The trial court granted the motion, finding that Rabie Cortez’s allegations were based on “events that occurred entirely in Mexico” and that her choice of a Florida forum was “given less deference” because she is a California resident who has “no apparent contacts with Florida.”
On appeal, the Third District upheld the trial court’s dismissal of Rabie Cortez’s lawsuit on forum non conveniens grounds, reasoning that “based on the test set forth [by this Court] in Kinney, Mexico is a more convenient forum to litigate the lawsuit than Florida.” Rabie Cortez, 66 So.3d at 961. Citing Kinney, the Third District recognized that there is a strong presumption against disturbing a plaintiffs initial choice of forum, but stated that the presumption “is given less deference when, as here, the plaintiff is an out-of-state resident with very little, if any, contact with Florida.” Id. at 962-63. Because Rabie Cortez chose to file suit in Florida, “a forum that is not her residence,” the Third District stated, “she is not entitled to a strong presumption in favor of Florida as her initial forum choice.” Id. at 963. Accordingly, the Third District held that “[wjithout this strong presumption,” the forum non conveniens test “clearly favor[ed] dismissal and resolution [of this lawsuit] in a Mexican forum.” Id.
In dissent, Judge Rothenberg criticized the Third District majority for failing to afford proper deference to Rabie Cortez’s choice of forum and for misapplying the Kinney factors to the facts of this case. Id. at 964 (Rothenberg, J., dissenting). The dissent highlighted that — contrary to *1090 the Florida Defendants’ original assertions that they lacked a connection with Florida and with this case — Miami, Florida, is the “operational, managerial, and marketing center for the entire Palace Resorts group.” Id. at 965. Specifically, Judge Rothenberg observed as follows:
[T]he Florida Defendants control: marketing; sales to individuals, groups, and travel agents; timeshare programs; customer service; press relations; and finance for the entire Palace Resorts Group. The Florida Defendants manage the entire U.S. market, which represents seventy percent of Palace Resorts’ business; the president of most of the Palace companies lives and works in Miami; and the Florida Defendants employ nearly one hundred employees in Miami. More importantly, the plaintiff alleges that: customer complaints are investigated by the Florida Defendants at their Miami corporate headquarters; the Florida Defendants issue refunds to unhappy customers, design vacation packages for all the Palace Resort hotels, approve all marketing literature, manage hotel websites, and issue all press releases at their Miami headquarters; and their Miami headquarters is the record-keeping center for the Mexican Palace Resorts hotels.
Id. at 965-66 (emphasis added). The dissent contended that it was error for the trial court to treat Rabie Cortez as a foreign plaintiff because of her California residence; that keeping this case in Florida would not cause manifest injustice to the Florida Defendants; that Florida has an interest in ensuring that harmful actions originating in Florida are properly addressed in Florida courts; and that Rabie Cortez’s choice of forum was owed great deference. Id. at 969-72.
Rabie Cortez sought this Court’s review, asserting that the Third District incorrectly applied the Kinney factors and failed to properly acknowledge the strong presumption of deference required by Kinney against disturbing her choice of a Florida forum. We first set forth a full explanation of Florida’s forum non conveniens test, and then turn to a closer examination of the deference owed to a plaintiffs initial choice of forum. With these principles in place, we address the Third District’s application of the forum non conveniens factors in this case.
ANALYSIS
We begin with a review of the forum non conveniens doctrine in Florida and clarify the test to be applied by Florida trial courts engaging in a forum non conveniens inquiry.
I. Forum Non Conveniens: The Four Factors
The common law doctrine of forum non conveniens, which translates to mean “inconvenient forum,” is an equitable, judicially crafted rule designed to allow a court to dismiss, in certain limited circumstances, a lawsuit with little connection to Florida that would be better suited and fairly litigated elsewhere. See Kinney, 674 So.2d at 87 & n. 1. This doctrine comes into play only if the plaintiff has first obtained personal jurisdiction over each of the defendants in Florida by effecting service of process, which occurs where the defendant is present in, resides in, or has its principal place of business in Florida, or through application of the state’s long-arm statute because, oftentimes, the defendant has committed a tortious act in Florida. See § 48.193, Fla. Stat. (2008) (setting forth the bases for the exercise of long-arm jurisdiction); Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 584 (Fla.2000) (“A court can exercise personal jurisdiction, inter alia, whenever a *1091 foreign corporation commits a ‘tortious act’ on Florida soil.”).
In exercising personal jurisdiction over a nonresident of this state, the trial court, upon proper motion, must engage in a two-part analysis, first determining whether “the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the [long-arm] statute,” and second analyzing “whether sufficient ‘minimum contacts’ are demonstrated to satisfy [constitutional] due process requirements.” Borden v. East-European Ins. Co., 921 So.2d 587, 592 (Fla.2006) (quoting Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989)). This dual inquiry for the exercise of long-arm jurisdiction is an important statutory and constitutional hurdle for the plaintiff to overcome and one that would precede an attempt to dismiss the case based on the equitable, judge-made doctrine of forum non conveniens.
As described in Kinney, which is this Court’s most recent detailed explication of the forum non conveniens doctrine in Florida:
Forum non conveniens is a common law doctrine addressing the problem that arises when a local court technically has jurisdiction over a suit but the cause of action may be fairly and more conveniently litigated elsewhere. Forum non conveniens also serves as a brake on the tendency of some plaintiffs to shop for the “best” jurisdiction in which to bring suit — a concern of special importance in the international context. Commentators generally have noted a growing trend in private international law of attempting to file suit in an American state even for injuries or breaches that occurred on foreign soil. There already is evidence the practice is growing to abusive levels in Florida.
674 So.2d at 87-88 (footnotes omitted). The Court in Kinney characterized the problem addressed by the forum non con-veniens doctrine as allowing Florida to serve as “a courthouse for the world,” in which Florida taxpayers were forced to “pay to resolve disputes utterly unconnected with this state’s interests.” Id. at 88.
In response to this perceived burden being placed on Florida trial courts to adjudicate disputes unrelated to Florida, this Court adopted the federal test for dismissing an action on forum non conve-niens grounds, which provides as follows:
[1] As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. [2] Next, the trial judge must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing plaintiffs’ initial forum choice. [3] If the trial judge finds this balance of private interests in equipoise or near equipoise, he must then determine whether or not factors of public interest tip the balance in favor of a trial in [another] forum. [4] If he decides that the balance favors such a ... forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.
Id. at 90 (quoting Pain v. United Tech. Corp., 637 F.2d 775, 784-85 (D.C.Cir.1980)). The forum non conveniens inquiry currently conducted by Florida courts is therefore a four-step process and is set forth in Florida Rule of Civil Procedure 1.061(a).
First, the trial court must ascertain whether there is another adequate forum available to hear the case. This factor encompasses two separate considerations: availability and adequacy. An alternative forum is “available” when that forum can *1092 assert jurisdiction over the litigation sought to be transferred. Leon v. Millon Air, Inc., 251 F.3d 1305, 1311 (11th Cir.2001); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). In Kinney, we noted that “the ability to perfect service of process” in this alternative forum is the key to the availability inquiry. Kinney, 674 So.2d at 90. In truth, a review of post-Kinney cases reveals that most defendants, desiring to move the dispute to the alternative forum, agree to accept service of process and even waive any defense of the statute of limitations. See Kawasaki Motors Corp. v. Foster, 899 So.2d 408, 411 (Fla. 3d DCA 2005); Tananta v. Cruise Ships Catering & Servs. Int'l, N.V., 909 So.2d 874, 888 (Fla. 3d DCA 2004); see also Fla. R. Civ. P. 1.061(c) (“In moving for forum-non-conveniens dismissal, defendants shall be deemed to automatically stipulate that the action will be treated in the new forum as though it had been filed in that forum on the date it was filed in Florida, with service of process accepted as of that date.”); Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1330 (11th Cir.2011) (explaining that the defendants stipulated to consent to service of process in the foreign forum, toll any applicable statutes of limitations, and make witnesses and documents available).
With respect to adequacy, an alternative forum does not have to be equivalent to the chosen forum to be adequate, but we have recognized that “dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute.” Kinney, 674 So.2d at 90 (quoting Piper, 454 U.S. at 254 n. 22, 102 S.Ct. 252). “A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American [c]ourt.” Ciba-Geigy Ltd. v. Fish Peddler, Inc., 691 So.2d 1111, 1115 (Fla. 4th DCA 1997) (quoting In re Air Crash Disaster Near New Orleans, La., 821 F.2d 1147, 1165 (5th Cir.1987)). “Additionally, a forum may be inadequate if it is grossly inefficient or given to extreme levels of partiality.” Hilton Int'l Co. v. Carrillo, 971 So.2d 1001, 1005 (Fla. 3d DCA 2008) (citing Leon, 251 F.3d at 1312). “Courts have been strict about requiring that defendants demonstrate that the alternative forum offers at least some relief.” Leon, 251 F.3d at 1311.
Second, and assuming an adequate alternative forum is available, the trial court must weigh the “balance of private conveniences.” Kinney, 674 So.2d at 91. An examination of private interests, although a term of expansive scope, essentially focuses on four concerns: access to evidence, access to witnesses, enforcement of judgments, and the practicalities and expenses associated with the lawsuit. Id.
Key to this second prong of the forum non conveniens inquiry, as we made clear in Kinney, is that “the reviewing court always should remember that a strong presumption favors the plaintiffs choice of forum.” Id. (emphasis added). This presumption “can be defeated only if the relative disadvantages to the defendant’s private interests are of sufficient weight to overcome the presumption.” Id. (emphasis added).
This presumption afforded to the plaintiffs forum choice is a critical part of the analysis in light of the fact that the whole premise behind the forum non conveniens doctrine is that the plaintiffs choice of forum, even if inconvenient to the plaintiff, is sufficiently inconvenient for the defendant. In other words, the assumption is that there is in fact a more convenient forum to litigate the dispute, but that the plaintiff selected the chosen forum to gain *1093 a strategic advantage. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (“A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.”).
The third step of the inquiry, as formulated in Kinney, is reached when, “after taking into account the presumption favoring the plaintiffs choice of forum,” the trial court determines that the private interest factors are at or near equipoise, meaning that “the advantages and disadvantages of the alternative forum will not significantly undermine or favor the ‘private interests’ of any particular party, as compared with the forum in which suit was filed.” Kinney, 674 So.2d at 91. In that instance, the court must then weigh the “public interest factors,” which is an analysis that “focuses on ‘whether the case has a general nexus with the forum sufficient to justify the forum’s commitment of judicial time and resources to it.’ ” Id. at 92 (quoting Pain, 637 F.2d at 791).
In Kinney, we noted, along with adopting the federal test for forum non conve-niens, that we would consider federal court opinions that “harmonize with the views expressed” in that opinion to be “persuasive, though not necessarily binding.” Id. at 93. Since we decided Kinney, the Eleventh Circuit has clarified its approach to the third factor of the federal forum non conveniens test, emphasizing that public interest factors should always be considered as part of the analysis, rather than only in select cases where the private interests are at or near equipoise. See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1100 n. 5 (11th Cir.2004).
The Eleventh Circuit has explained that “although ‘private factors are generally considered more important’ than public ones,” a proper forum non conveniens inquiry actually requires courts to “consider both public and private factors ‘in all cases.’” Id. (quoting Leon, 251 F.3d at 1311). In addition, other courts have noted that, while some articulations of the forum non conveniens test analyze the public interest factors only when the private interests are at or near equipoise, language in the United States Supreme Court’s decision in Piper indicates that “a trial court must consider ‘all relevant public and private interest factors.’ ” Kedy v. A.W. Chesterton Co., 946 A.2d 1171, 1185 (R.I.2008) (emphasis added) (quoting Piper, 454 U.S. at 257, 102 S.Ct. 252).
Because we believe that always considering the public interest factors in the inquiry furthers the policies behind our adoption of the forum non conveniens test set forth in Kinney, we deem the Eleventh Circuit’s clarification of this factor to be persuasive, and we therefore now adopt it as a part of the Florida test. Accordingly, consistent with the Eleventh Circuit’s approach and the approach taken by many other jurisdictions, we emphasize that Florida courts also should always consider this third step of the forum non conveniens inquiry, even if the private factors weigh more heavily in favor of the alternative forum, and should require that the balance of public interests also be tipped in favor of the alternative forum in order to defeat the presumption favoring the plaintiffs forum choice. See Kinney, 674 So.2d at 92 (stating that “if the public interest factors ... are at or near equipoise, then the third step of the inquiry will provide no basis for defeating the presumption favoring [the] plaintiffs choice of forum”).
The fourth and final Kinney factor is “designed to ensure that when a forum non conveniens dismissal is granted, the remedy potentially available in the al *1094 ternative forum does not become illusory.” Id. As we explained in Kinney, this requires that the courts of the alternative forum are genuinely open and available to provide a convenient remedy and that the moving party stipulate to treat the action in the new forum as though it had been filed in that forum on the date it was filed in Florida. Id.
Having now reaffirmed and clarified the four factors that encompass a forum non conveniens analysis in Florida, we turn next to a closer examination of the strong presumption in favor of the plaintiffs choice of forum.
II. Strong Presumption in Favor of Plaintiffs Initial Forum Choice
In Kinney, where this Court adopted the presumption in favor of the plaintiffs initial choice of forum as part of the forum non conveniens test, the facts were as follows. A New Hampshire corporation registered to do business in Florida but with its central operations in New Jersey sued a Delaware corporation headquartered in New York over a dispute to a contract negotiated in New York and applicable to employees around the country, including in Florida. Id. at 87. Relying on the defendant’s regional office and operation in Dade County, the plaintiff brought suit in Florida regarding the contractual dispute, even though the contract was negotiated in New York and neither corporate party had its principal place of business in Florida. Id. Accordingly, the case’s connection to Florida was tenuous at best, and clearly the plaintiff was not a Florida resident.
Yet, in Kinney, this Court adopted the rule that a plaintiffs choice of forum is entitled to a strong presumption. We did not limit this presumption in Kinney to Florida plaintiffs or indicate in any way that the policy behind this rule would automatically be eviscerated by applying it to out-of-state residents. Indeed, it is axiomatic that the plaintiff has the right to choose the forum. While the doctrine of forum non conveniens is designed to prevent an abuse of that right when it would cause a material injustice to the defendant, it certainly is not designed to empower defendants to disadvantage plaintiffs by engaging in reverse forum-shopping where, as in a scenario like the one presented in this case, litigating in Florida would not cause a substantial burden to the defendant.
Although we recognize that at least two of Florida’s district courts [5] and some other states[6] have interpreted the federal case law to mean that, as is the case with a plaintiff from another country, less deference is likewise owed to an out-of-state resident’s choice of forum, we do not agree that the strong presumption in favor of the plaintiffs choice of forum applies only to Florida residents. Indeed, it is difficult to understand how or why a United States plaintiffs choice of a United States forum can or should be overcome in favor of a forum in another country, thereby effectively denying that plaintiff access to United States courts. See SME Racks, 382 F.3d at 1101 (stating that courts “should be thoroughly convinced that material injustice is manifest before ... denypng] a United States citizen access to the courts of this country” (quoting La Seguridad v. Transytur Line, 707 F.2d 1304, 1308 n. 7 (11th Cir.1983))).
*1095 In Kinney, we adopted the federal test for forum non conveniens, and we acknowledge that the federal courts have held that the presumption in favor of a plaintiffs forum choice does not apply with equal force in federal litigation to “foreign” plaintiffs, meaning those plaintiffs from another country. See Piper, 454 U.S. at 256, 102 S.Ct. 252. However, in federal litigation, a federal district court can transfer the case from the state where the case was filed to any other state within the United States. See 28 U.S.C. § 1404(a) (2008) (“For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.”). This means, therefore, that the federal forum is truly the entire United States, and the considerations that have led the federal courts to conclude that plaintiffs from another country are not entitled to the same deference with respect to their initial choice of forum are therefore different than the reasons for affording the presumption to a plaintiff from another state.
A principal reason for treating plaintiffs from foreign countries differently is that “courts are suspicious that a foreign plaintiffs decision to bring suit in the United States is motivated by a search for a jurisdiction with laws that would be the most favorable for the claim.” Windt v. Qwest Commc’ns Int’l, Inc., 544 F.Supp.2d 409, 417 (D.N.J.2008). For example, in Piper, the United States Supreme Court rejected the Scottish plaintiffs’ contention that Scotland did not recognize strict liability as a basis for deciding that Scotland was an inadequate forum in the lawsuit filed by citizens of Scotland. Piper, 454 U.S. at 254-55, 102 S.Ct. 252. The Supreme Court stated that United States courts, “which are already extremely attractive to foreign plaintiffs, would become even more attractive” if considerations such as a change in law and the rights and procedures of courts in other countries were determinative in a forum non conveniens analysis. Id. at 252, 102 S.Ct. 252 (footnote omitted).
Another application of the differing considerations at play when a plaintiff is from another country is found in Gonzalez v. Chrysler Corp., 301 F.3d 377 (5th Cir.2002). There, the plaintiff, a Mexican citizen, purchased an American vehicle in Mexico, and the accident at the center of the dispute occurred in Mexico. Id. at 379. The issue in that case was whether “the limitation imposed by Mexican law on the award of damages renders Mexico an inadequate alternative forum for resolving a tort suit brought by a Mexican citizen against a United States manufacturer.” Id. In rejecting this argument, the Fifth Circuit explained that “Mexico, as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action_It would be inappropriate — even patronizing — for us to denounce this legitimate policy choice by holding that Mexico provides an inadequate forum for Mexican tort victims.” Id. at 381-82 (footnote omitted).
A lawsuit filed by a United States citizen, however, “brings into force considerations very different from those in suits between foreigners.” Swift & Co. Packers v. Compania Colombiana del Caribe, S.A., 339 U.S. 684, 697, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). As cogently explained by the Eleventh Circuit, the “presumption in favor of the plaintiffs’ initial forum choice in balancing the private interests is at its strongest when the plaintiffs are citizens, residents, or corporations of this country.” Wilson v. Island Seas Invs., Ltd., 590 F.3d 1264, 1270 (11th Cir.2009) (quoting SME Racks, 382 F.3d at 1101).
*1096 It is for this reason that, in adopting the presumption in Kinney, we never indicated that, even though the presumption of deference to the plaintiffs initial choice of forum is a critical element of the forum non conveniens test, it did not apply to the non-Florida plaintiffs choice in Kinney of a Florida forum. Accordingly, we now emphasize, in another case involving a non-Florida plaintiff, that except where the plaintiff is from another country, the presumption in favor of the plaintiffs initial choice of forum is always entitled to great deference.
Additionally, when the plaintiff is a citizen or resident of the United States and the alternative forum is a foreign country, the defendant’s burden to overcome this presumption is especially high. As stated by the Eleventh Circuit, courts “should be thoroughly convinced that material injustice is manifest before ... denying] a United States citizen access to the courts of this country.” SME Racks, 382 F.3d at 1101 (quoting La Seguridad, 707 F.2d at 1308 n. 7).
III. This Case
Turning to this case, the Third District committed two errors in its analysis of the forum non conveniens factors. First, the Third District erred by misapplying our decision in Kinney that the plaintiffs choice of forum is entitled to deference and in not affording this presumption to Rabie Cortez’s choice of a Florida forum for her claim against the Florida Defendants. As we have explained, the plaintiffs right to choose the forum is not just one factor to consider in the forum non conveniens analysis, but is a strong presumption that can be overcome only when the balance is tipped strongly in favor of the defendant. See Gulf Oil, 330 U.S. at 508, 67 S.Ct. 839 (“[U]nless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed.”).
We agree with Judge Rothen-berg’s dissent that “[b]efore denying a United States citizen access to the courts of this country, the reviewing court must ‘require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest.’ ” Rabie Cortez, 66 So.3d at 969 (Rothenberg, J., dissenting) (quoting SME Racks, 382 F.3d at 1101). Rabie Cortez, a United States citizen, therefore should not be forced to litigate her claim in a foreign country absent strong countervailing interests, which are not present in this case, that tip the balance in favor of the Florida Defendants.
Second, the Third District erred in its analysis of the private interest factors, principally by treating Rabie Cortez’s cause of action as though it had no connection with Florida and instead focusing on the case’s underlying connection with Mexico. This was error because, although the assault occurred in Mexico and Rabie Cortez initially brought suit against numerous defendants, including Mexican companies, for claims closely related to the assault itself (such as vicarious liability and negligent employee hiring), Rabie Cortez’s only remaining allegation is her complaint of negligent vacation packaging by the three Florida Defendants headquartered in Miami. In other words, although the assault was the precipitating event for her filing suit, Rabie Cortez is actually alleging negligent conduct arising from actions committed in Florida. Judge Rothenberg explained this point in her dissent as follows:
The Florida Defendants, with a straight face, claim that [Mexico] is a more convenient forum to litigate a United States citizen’s negligent vacation packaging claim against them, although Miami is where their corporate headquarters is located, all the Palace Resort hotels’ vacation packages are approved, and all *1097 customer complaints are investigated. Because Miami is the operational, managerial, and marketing center for the entire Palace Resorts group, the Florida Defendants control marketing and sales, and Miami is the record keeping center for the Mexican Palace Resorts hotels, it is difficult to understand how, based on Cortez’s causes of action, Mexico would be a more convenient forum.

Id.

It is therefore clear that, although Rabie Cortez is a California resident, the Florida Defendants have their “operational, managerial, and marketing” headquarters in Miami. Id. at 965. As the Third District itself has stated in other cases, “a forum non conveniens argument coming from a party sued where [it] resides is both ‘puzzling’ and ‘strange.’” Cardoso v. FPB Bank, 879 So.2d 1247, 1250 (Fla. 3d DCA 2004) (quoting Sanwa Bank, Ltd. v. Kato, 734 So.2d 557, 561 (Fla. 5th DCA 1999)). Indeed, “the fact that the defendants are located in this country,” and especially in this state, “is one indication that it would be less burdensome for the defendants to defend suit in this country than it would be for [the plaintiff] to litigate in a foreign country.” Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339, 346 (8th Cir. 1983); see also Reid-Walen v. Hansen, 933 F.2d 1390, 1395 (8th Cir.1991); Manu Int’l, S.A. v. Avon Prods., Inc., 641 F.2d 62, 67 (2d Cir.1981).
Further, we emphasize that the proper focus of the forum non conveniens inquiry and the analysis of the private interest factors is not to decide where the best location for bringing suit would be, but rather to analyze whether, after affording a strong presumption to the plaintiffs choice of forum and considering the balance of private conveniences, it is in the interest of Florida’s courts to use their inherent power to decline to exercise jurisdiction over the dispute because Florida is an inconvenient forum. This recognition corresponds with our earlier clarification that public interest factors, including Florida’s interest in the dispute, should always be considered as part of the forum non conveniens analysis.
In Kinney, we made it clear that our rationale for adopting the federal forum non conveniens test was grounded in the realization that Florida’s right of access to the courts should not be “a limitless warrant to bring the world’s litigation here,” and that reasonable limitations must be placed on actions in which Florida’s interests are weak and remedies are available in a convenient alternative forum that has a better connection with the dispute. Kinney, 674 So.2d at 92-93. Key to this inquiry, therefore, is an analysis of what Florida’s interests are in a given case.
Here, those interests are many, including most importantly “ensuring that harmful actions originating in Florida, which may violate duties imposed by Florida law, are properly addressed in Florida courts.” Rabie Cortez, 66 So.3d at 972 (Rothenberg, J., dissenting). In addition, Florida has an interest in permitting Rabie Cortez, a United States citizen, to maintain an action against United States corporations in a United States forum — especially where the lawsuit’s connection to Florida justifies Florida’s commitment of judicial time and resources to the case.
Finally, we note that although the courts have applied a minimum requirement to what constitutes an adequate alternative forum, see, e.g., Leon, 251 F.3d at 1311 (explaining that “courts have not always required that defendants do much to refute allegations of partiality and inefficiency in the alternative forum”), the allegations from the plaintiffs expert in this case, while not tested through an eviden-tiary hearing, are of concern. In particu *1098 lar, the plaintiffs expert stated that the negligent vacation packaging claim at issue would not be cognizable in Mexico and that Rabie Cortez would have to “adapt her legal theory to Mexican causes of action that have rarely, if ever, been employed.” Rabie Cortez, 66 So.3d at 968. In order to file suit in Mexico, therefore, the plaintiff would have to utilize obscure causes of action that are essentially not cognizable in the Mexican courts where a forum non conveniens dismissal would force the lawsuit to be filed. See Telemundo Network Grp., LLC v. Azteca Int’l Corp., 957 So.2d 705, 710 (Fla. 3d DCA 2007) (finding that the plaintiffs potential causes of action in Mexico amounted to no remedy at all, partly due to a lack of precedent). As Judge Rothenberg pointed out in her dissent, the “lack of precedent, and reliance on a theoretical possibility of recovery, casts doubt on the adequacy” of the Mexican forum in this case. Rabie Cortez, 66 So.3d at 968 (Rothenberg, J., dissenting).
Ultimately, Rabie Cortez’s allegations center on the Florida Defendants’ allegedly negligent conduct in Miami, where their operational headquarters are located. We echo the statement in the dissent below that Rabie Cortez “cannot be denied access to the courts of this country absent a strong showing by the Florida Defendants that her lawsuit against them would result in substantial inconvenience for them to litigate in her choice of forum.” Id. at 973. Given the presumption in favor of Rabie Cortez’s Florida forum choice, the location of the allegedly negligent conduct, and Florida’s interest in hearing disputes involving negligent conduct in Florida, we hold that dismissal of Rabie Cortez’s lawsuit on forum non conveniens grounds was improper.
CONCLUSION
In sum, we conclude that requiring Ra-bie Cortez, a California resident, to litigate a claim in Mexico against defendants headquartered in Florida for allegedly negligent conduct that occurred in Florida was an erroneous application of the forum non conveniens doctrine in this case. For the reasons stated herein, we hold that the Third District erred in its application of Kinney, especially by failing to afford a strong presumption to Rabie Cortez’s choice of forum.[7] Accordingly, we quash the Third District’s decision.
It is so ordered.
LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., concurs.

. The Florida Justice Association filed an ami-cus brief in support of the Petitioner and the Florida Defense Lawyers Association, Inc., filed an amicus brief in support of the Respondents.

. See Gracey v. Eaker, 837 So.2d 348, 351-52 (Fla.2002) (accepting the well-pled allegations as true because the case was before the Court on a dismissal of the action at the pleading stage); Siegle v. Progressive Consumers ins. Co., 819 So.2d 732, 734-35 (Fla.2002) ("[W]hen presented with a motion to dismiss, a trial court is required to ‘treat the factual allegations of the complaint as true and to consider those allegations in the light most favorable to the plaintiffs.’ ” (quoting Hollywood Lakes Section Civic Ass’n v. City of Hollywood, 676 So.2d 500, 501 (Fla. 4th DCA 1996))).

. Rabie Cortez originally filed suit against the following six entities: (1) Palace Holding, S.A. de C.V.; (2) Palace Resorts, S.A. de C.V.; (3) Palace Resorts, Inc.; (4) Palace Resorts, LLC; (5) Tradco, Ltd., Inc.; and (6) Costco Wholesale Corporation. Palace Holding, S.A. de C.V., is the Mexican parent company of Palace Resorts, S.A. de C.V. (which is also a Mexican company), as well as of Palace Resorts, Inc., and Palace Resorts, LLC, both of which are Delaware companies headquartered at the same address in Miami, Florida. Tradco, Ltd., Inc., is also headquartered at that Miami address, and is a subsidiary of Marlborough, Ltd., which is co-owned by the president of Palace Holding, S.A. de C.V., who is the same individual that serves as the president of Palace Resorts, Inc., and Palace Resorts, LLC. Rabie Cortez asserted numerous claims against the Mexican companies and against Costco, with whom she booked her vacation, but alleged only negligent vacation packaging against the Respondents, Palace Resorts, Inc.; Palace Resorts, LLC; and Tradco, Ltd., Inc.

. Although the Florida Defendants have maintained throughout this case that they have little to no connection with the events giving rise to this cause of action, the motion to dismiss was not based on a failure to state a cause of action, improper venue, or lack of jurisdiction. See Fla. R. Civ. P. 1.140(b).

. See Kerzner Int'l Resorts, Inc. v. Raines, 983 So.2d 750, 752 (Fla. 3d DCA 2008); Value Rent-A-Car, Inc. v. Harbert, 720 So.2d 552, 555 (Fla. 4th DCA 1998).

. See, e.g., Quixtar Inc. v. Signature Mgmt. Team, LLC, 315 S.W.3d 28, 33 (Tex.2010); Lowe v. Norfolk & W. Ry. Co., 124 Ill.App.3d 80, 79 Ill.Dec. 238, 463 N.E.2d 792, 798 (1984).

. We note, however, that this Court has not been called upon to review the nature of the allegations or the adequacy of the cause of action asserted.